| | |
|---|---|
| Printiss Jackson-Davis individually and as personal representative of the estate of Brenda Jackson, Plaintiff, <br><br> v. <br><br> Carnival Corporation, Defendant. | Civil Action No. 17-24089-Civ-Scola |

### Order on Defendant's Motion to Dismiss

This matter is before the Court upon the Defendant Carnival Corporation's motion to dismiss and to strike (ECF No. 8). The Court has considered the motion, all opposing and supporting materials, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Court **grants in part and denies in part** the motion (**ECF No. 8**.)

**1. Background**

This case arises as a result of the death of Brenda Jackson, the Plaintiff Printiss Jackson-Davis's mother, on the last day of a roundtrip cruise from New Orleans to the Caribbean on the "Carnival Dream" ship. (*See* Complaint, ECF No. 1.) Ms. Jackson was sixty-eight years old and suffered from a mild form of chronic obstructive pulmonary disease ("COPD"). (*Id.* at ¶¶ 9-10.) In the early morning hours of November 13, 2016, the Plaintiff and Ms. Jackson went to the ship's medical facility to see a doctor as a result of Ms. Jackson's experiencing heavy and shallow breathing. (*Id.* at ¶ 10.) The "Carnival Dream" was already underway in the Mississippi River, en route from the Caribbean to New Orleans. (*Id.* at ¶ 12.) Ms. Jackson was seen by the ship's doctor, who checked her oxygen level and decided to administer a "breathing treatment," during which the doctor directed an assisting nurse to increase oxygen level flow to Ms. Jackson, despite the nurse's warnings against it due to Ms. Jackson's COPD. (*Id.* at ¶ 13.)

While connected to the oxygen tank and receiving allegedly excessive amounts of oxygen, Ms. Jackson began to feel lightheaded and requested to remove the oxygen, which request the doctor advised against. (*Id.* at ¶ 14.) A short time later, the Plaintiff noticed Ms. Jackson acting strange, and when

asked if everything was okay, Ms. Jackson responded "no" and removed the oxygen. (*Id.*) Moments later, Ms. Jackson made what the Plaintiff alleges was an "agonized screeching noise," and she went into cardiac arrest. (*Id.* at ¶ 16.) The ship doctor and other Carnival staff were able to stabilize her, but she suffered another heart attack shortly after. (*Id.* at 17.)

The ship doctor determined that Ms. Jackson should be evacuated by helicopter, but allegedly did not in fact call for an evacuation, despite telling the Plaintiff that a helicopter was on its way. (*Id.* at 18.) Nurses attempted to intubate and draw blood from Ms. Jackson, whereupon she suffered a severe seizure, followed by a third heart attack. (*Id.* at ¶¶ 18-19.) As a result, the doctor and other medical staff decided that Ms. Jackson could not fly, and told the Plaintiff that the Coast Guard had been called and was on the way. (*Id.* at ¶ 19.) Ms. Jackson suffered another heart attack and died approximately three hours after first going to the ship's medical facility. (*Id.* at 20.) The Plaintiff alleges that the Coast Guard was not in fact called until almost twelve hours after Ms. Jackson's death, despite the medical staff's representations. (*Id.*)

In the Complaint, the Plaintiff asserts claims of negligence against Carnival as follows: direct negligence (Count 1), negligence for the acts of non-medical personnel based upon vicarious liability through actual agency (Count 2), negligence for the acts of medical personnel based upon vicarious liability through actual and apparent agency (Counts 3 and 4), and negligent hiring and retention (Count 5). Carnival seeks dismissal of the Complaint for failure to state a claim.

### 2. Legal Standard

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### 3. Analysis

Carnival argues that Count 1 alleging direct negligence should be dismissed because the Plaintiff asserts duties that do not exist under maritime law. Carnival argues further that Counts 2, 3, and 4 should be dismissed because Count 2 asserting vicarious liability for the alleged negligence of non-medical personnel fails to sufficiently allege an agency relationship, the counts impose an improper standard of care, and fail to adequately allege proximate causation. Finally, Carnival argues that Count 5 asserting a claim for negligent hiring and retention should be dismissed for failure to sufficiently allege knowledge on the part of Carnival. The Court considers each argument in turn.

### A. Count 1 sufficiently states a claim for direct negligence against Carnival

The Court notes at the outset that the parties do not dispute that this action is governed by general maritime law. Generally, under maritime law a ship owner "owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir. 1989) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)). To state a negligence claim, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). "[A] shipowner is only liable to its passengers for medical negligence if its conduct breaches the carrier's more general duty to exercise 'reasonable care under the circumstances.'" *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1233 (11th Cir. 2014) (quoting *Kermarec*, 358 U.S. at 632).

In Count 1, the Plaintiff asserts a direct negligence claim against Carnival, based upon the following violations: (a) the failure to timely divert the ship or evacuate Ms. Jackson; (b) relying on medical opinions and/or advice of ship doctors and nurses not properly qualified or licensed in the jurisdiction of

the flag of the ship; (c) failing to properly consult qualified shore-based personnel to make safe decisions about treatment and evacuation; (d) failing to adequately train, supervise, and instruct crew members to properly respond to medical emergencies and take steps to promptly evacuate a passenger who they were clearly unprepared and unqualified to treat; (e) failing to develop and institute adequate procedures and policies to address Plaintiff's medical situation; (f) failing to employ the proper type of doctors and nurses; and (g) failing to have or utilize "Face to Face Telemedicine." (Complaint, ECF No. 1 at ¶¶ 28a.-g.) Carnival argues that maritime law imposes none of these duties upon it. However, when viewed through the proper lens, these allegations amount to violations of Carnival's overarching duty to exercise reasonable care under the circumstances. Nevertheless, the parties expend a considerable amount of time discussing the extent and effect of the Eleventh Circuit's decision in *Franza*. As such, a brief discussion of the contours of the *Franza* opinion is in order.

In *Franza*, the decedent was a passenger who fell and hit his head while the cruise ship he was on was docked in Bermuda. *Franza*, 772 F.3d at 1228. Instead of receiving treatment onshore, he was taken to the ship's infirmary, where he was seen by a nurse—who despite knowing about his fall and observing the lump and abrasion on his head—ordered no diagnostic scans, and sent him back to his cabin. *Id.* at 1228-29. A short time later, the decedent's family noticed a change in his condition and called 9-1-1, but it took almost twenty minutes for someone to arrive to transport him again to the infirmary. *Id.* Almost four hours after his first visit to the infirmary, the decedent was seen by the ship doctor, who ordered that the decedent be transported for care at a Bermudian hospital, where he arrived more than six hours after his initial visit to the infirmary. *Id.* at 1229. He died one week later. *Id.* As a result, the decedent's daughter, Franza, sued Royal Caribbean, asserting negligence claims based upon the theories of actual and apparent agency.

In determining that Franza's claims could advance upon both agency theories (rejecting the so-called *Barbetta* rule), the Eleventh Circuit noted that "Franza [did] not argue that Royal Caribbean violated [its] duty directly," *id.* at 1233—as the Plaintiff does here. However, after the Eleventh Circuit decided that Franza plausibly alleged two alternative theories of vicarious liability, the court examined the allegations in order to determine whether they sufficiently supported a claim of negligence. Franza, like the Plaintiff here, alleged a number of violations, including the failure to timely diagnose, the failure to order diagnostic scans, and the failure to evacuate, which the Eleventh Circuit found sufficiently stated a claim for negligence. Indeed, here, as in *Franza*, the

Plaintiff alleges specific enumerated violations of Carnival's duty to exercise reasonable care under the circumstances, which resulted in her mother's death. Furthermore, the Plaintiff contends that had her mother received the appropriate care and treatment, or been timely evacuated, she would not have suffered injuries resulting in death. (Complaint, ECF No. 1 at ¶ 32.) Here, as in *Franza*, "the precise contours of [Carnival's] duty depend on questions of fact that need not and cannot be answered at this stage." *Franza*, 772 F.3d at 1254. Accordingly, Carnival's motion to dismiss Count 1 is denied.

### B. Counts 2, 3, and 4, sufficiently state claims based upon actual and apparent agency

Carnival buttresses its argument for dismissal of Counts 2, 3, and 4 in large part upon the premise that the Plaintiff attempts to impose upon it additional duties. However, the Court has already noted that the contours of Carnival's duty to exercise reasonable care under these circumstances is not a matter to be determined upon a motion dismiss; and, therefore, Carnival's argument is again rejected. *See Gharfeh v. Carnival Corp.*, No. 17-20499-CIV-GOODMAN, 2018 WL 501270, at *9 (S.D. Fla. Jan. 22, 2018) (Goodman, Mag. J.) (denying Carnival's motion to dismiss, stating that "[t]he issue will be whether Defendants acted reasonably under the circumstances. That is a fact-based determination.") In addition, Carnival contends that the Plaintiff fails to sufficiently allege an agency relationship in Count 2.

"The elements of an actual agency relationship are (1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1310 (S.D. Fla. 2011) (Altonaga, J.) (internal quotations and citation omitted). Upon review of the allegations in the Complaint, though not detailed, they are sufficient to state a claim based upon actual agency. Taken as a whole, the Plaintiff alleges that Carnival non-medical officials and employees had the ability to monitor and participate in potential medical emergencies by communicating with the ship's crew, and they, in conjunction with the medical personnel, failed to properly care for Ms. Jackson. (*See* ECF No. 1 at ¶ 23.) Moreover, "the nature and scope of an agency relationship is intensively factual and will almost always require discovery to fully resolve the issues." *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1150 (S.D. Fla. 2016) (Lenard, J.). Therefore, the Court will not dismiss Count 2.

Furthermore, the Court denies Carnival's request for dismissal of Counts 2, 3, and 4 on the basis that the Plaintiff fails to sufficiently allege proximate causation because the Complaint lacks any factual information as to how the alleged failure to do any of the acts alleged proximately caused her death. This

argument lacks merit. Indeed, the Complaint alleges that if Ms. Jackson had received the appropriate care or treatment, or had been timely evacuated, she would not have suffered the injuries resulting in death. At this stage, that is sufficient.

### C. Count 5 does not state a claim for negligent hiring and retention

Finally, Carnival seeks dismissal of Count 5 on the basis that the Plaintiff alleges in conclusory fashion that Carnival knew or should have known about the unfitness of the doctors, nurses, and other personnel.[1] The Court agrees. "In order to state a cause of action for the tort of negligent hiring or retention . . ., a plaintiff must allege facts showing that the employer was put on notice of the harmful propensities of the employee." *Mumford v. Carnival Corp.*, 7 F. Supp. 3d 1243, 1249 (S.D. Fla. 2014) (Lenard, J.) (quoting *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1318 (M.D. Fla. 2002) (internal quotations omitted). While the Complaint does generally allege shortcomings in hiring and retention of medical personnel, the Plaintiff fails to allege any facts with respect to the doctor or nurse who treated Ms. Jackson, other than to allege that the doctor ignored the nurse's suggestion that increasing oxygen was not indicated in a person with COPD. This is insufficient to raise the Plaintiff's claim for relief beyond the speculative level. *See Gavigan v. Celebrity Cruises, Inc.*, 843 F. Supp. 2d 1254, 1261 (S.D. Fla. 2011) (Seitz, J.) (dismissing claim for negligent selection/retention where the complaint lacked "sufficient factual information about what Celebrity knew a doctor had done or not done and when Celebrity possessed that information . . . [or] that any doctor performed his or her duties so poorly that Celebrity should have *immediately* relieved the doctor of all responsibility for treating any other patients.") (emphasis in original). Accordingly, the Court dismisses Count 5.

### 4. Motion to strike punitive damages allegations

Carnival also seeks to strike the Plaintiff's request for punitive damages, arguing that such damages are improper in maritime personal injury cases,

---

[1] In its reply (ECF No. 12), Carnival also argues for the first time that the Court should dismiss both Count 5 and the claim for direct negligence based on hiring of unqualified medical personnel because they are duplicative. As such, this argument is improper, and the Court does not consider it. *See Powell v. Carey Int'l, Inc.,* 490 F. Supp. 2d 1202, 1206 n.4 (S.D. Fla. 2006) (Seitz, J.) (stating that "the Court cannot consider new arguments raised for the first time in a reply brief."); *Herring v. Sec'y, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotations and citation omitted.).

and that the Plaintiff fails to plead facts regarding conduct rising to the necessary level to justify punitive damages. The Court will not strike the allegations regarding punitive damages for either reason.

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are not favored, however, and are "regularly 'denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'" *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech.*, 744 F. Supp. 2d 1305, 1309 (S.D. Fla. 2010) (Altonaga, J.) (citation omitted). In the end, the decision to strike allegations in a pleading is committed to the district court's "broad discretion." *Porcelanas Florencia, S.A. v. Carribean Resort Suppliers, Inc.*, 2007 WL 171590, at *1 (S.D. Fla. Jan. 18, 2007) (Cooke, J.).

First, "a plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's wanton, willful, or outrageous conduct." *Lobegeiger v. Celebrity Cruises, Inc.*, No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011) (Altonaga, J.) (internal quotations and citation omitted); *see also Doe v. Royal Caribbean Cruises, Ltd.*, No. 11-23323-CIV, 2012 WL 920675, at *4 (S.D. Fla. Mar. 19, 2012) (Goodman, Mag. J.) (same); *Fleischer v. Carnival Corp.*, No. 15-24531-CIV, 2016 WL 1156750, at *1 (S.D. Fla. Mar. 17, 2016) (Moore, C.J.) (same).

Second, the Court finds that the alleged facts are sufficient at this stage to plausibly lead to entitlement for punitive damages, notwithstanding that the Plaintiff did not use the terms "willful," "wanton," or "outrageous" in the Complaint. For example, the Plaintiff alleges that the doctor ignored the nurse's warning regarding increased oxygen level for someone with COPD, the doctor stated to the Plaintiff that a helicopter was on the way when none had been called, and the doctor and medical staff told the Plaintiff the Coast Guard had been called, when the Coast Guard was not called until almost twelve hours after Ms. Jackson's death. As such, the Court denies Carnival's motion to strike.

### 5. Conclusion

For the reasons set forth, the Court **grants in part** Carnival's motion to dismiss (**ECF No. 8**), and dismisses Count 5 with leave to amend. In all other respects, the motion is **denied**. In addition, Carnival's motion to strike is also **denied**. The Plaintiff may file an amended complaint on or before **March 30,**

**2018**. If the Plaintiff does not file an amended complaint, Carnival shall file an answer to the Complaint on or before **April 6, 2018**.

**Done and ordered** at Miami, Florida, on March 23, 2018.

_____
Robert N. Scola, Jr.
United States District Judge