# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION

Case No. 17-24089-Civ-Scola

Printiss Jackson-Davis, individually
and as Personal Representative of the
Estate of Brenda Jackson,

Plaintiff

vs.

Carnival Corporation d/b/a
Carnival Cruise Lines,

Defendant
_____/

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Printiss Jackson-Davis, individually and as Personal Representative of the

Estate of Brenda Jackson, through the undersigned counsel, hereby sues Defendant, Carnival

Corporation d/b/a Carnival Cruise Lines, and alleges:

## GENERAL ALLEGATIONS

### THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Printiss Jackson-Davis ("Mrs. Jackson-Davis"), individually and as

Personal Representative of the Estate of Brenda Jackson ("Ms. Jackson") is a resident of the

State of Georgia. Ms. Jackson was also a resident of the State of Georgia at the time of the

underlying events.

2.      Defendant, Carnival Corporation d/b/a Carnival Cruise Lines ("Carnival"), is a

Panamanian Corporation with its principal place of business at 3655 N.W. 87th Ave., MLGL

815, Miami, Florida 33178.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 because the amount in controversy exceeds the sum or value of seventy five thousand dollars ($75,000.00), exclusive of interest and costs, and there is complete diversity between the parties hereto. The Court also has jurisdiction over this matter because the causes of action asserted herein arise under 28 U.S.C. § 1333 and the General Maritime Laws of the United States.

4.      The Court has jurisdiction over Carnival pursuant to Florida Statutes § 48.193 because (a) Carnival is engaged in substantial and not isolated business activity within this state, and routinely operates in the waters of this state; (b) the causes of action set forth herein arise from Carnival, personally and/or through its agents, operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; and (c) the causes of action set forth herein arise from Carnival, personally and/or through its agents, committing tortious acts in whole or in part within this state.

5.      Venue is proper in this Court because Carnival's principal place of business is within Miami-Dade County and a substantial part of the events or omissions giving rise to the causes of action set forth herein occurred within the county. The cruise line ticket at issue also requires that suit be brought in this Court.

6.      Carnival has already answered and made an appearance in this case through counsel.

### FACTUAL BACKGROUND

7.      Carnival, as a common carrier, is engaged in the business of providing vacation cruises to the public aboard vessels including the *Carnival Dream*. At all times material hereto,

Carnival owned, operated, managed, maintained, and/or controlled the *Carnival Dream*.

8.     Carnival, through online, television, radio and print advertisements specifically markets its cruises as family friendly vacations with extensive offerings and activities for people of all ages and abilities. As part of providing vacation cruises, Carnival is obligated to provide competent medical care and facilities, as well as personnel capable of making sound medical and evacuation decisions.

9.     On November 13, 2016, Printiss Jackson-Davis and her mother Brenda Jackson, 68 years old, were onboard the *Carnival Dream* for a cruise from New Orleans to the Caribbean and back. Ms. Jackson had been awarded her ticket for the cruise, and Mrs. Jackson-Davis was a paying passenger.

10.    On the morning of November 13, 2016, Mrs. Jackson-Davis went with her mother to see the ship's doctor at roughly 2:30 a.m. because Ms. Jackson—who suffered from a mild form of chronic obstructive pulmonary disease (COPD)—was breathing heavily and shallowly. Mrs. Jackson-Davis took Ms. Jackson to the medical facility of the *Carnival Dream* to be examined and to have her oxygen levels checked, as they were planning to be in New Orleans for the next three days and would be doing a lot of walking.

11.    At the time that Mrs. Jackson-Davis and Ms. Jackson went to the ship's doctor, they were in the early morning hours of the last day of the cruise. The *Carnival Dream* docked in New Orleans between 6:00 a.m. and 7:00 a.m. on the morning of November 13, 2016. Cruise ships that dock in New Orleans from the Gulf of Mexico must sail up the Mississippi River on the following path that takes roughly 7 hours to navigate:



12.     At roughly 2:30 a.m., when Mrs. Jackson-Davis and Ms. Jackson first went to see the ship's doctor, Mrs. Jackson-Davis could see that the ship was already in the Mississippi River as she could see the outlines of buildings and lights all along the nearby edge of the Mississippi River.  Thus, the *Carnival Dream* had within three miles of the coast of Louisiana at all times during the treatment of Ms. Jackson by Carnival medical staff and personnel.

13.     The ship's doctor checked Ms. Jackson's oxygen levels, which read 98. The doctor then made the decision to put Ms. Jackson on oxygen and to perform a "breathing treatment." A ship's nurse was assisting the ship's doctor with placing Ms. Jackson on oxygen, and had initially set the oxygen flow to level 7. The doctor then told the nurse to increase the

flow of oxygen to level 10, in spite of warning from the nurse that a level 10 oxygen flow is a lot for someone with COPD.

14.     While connected to the oxygen tank, which was exceeding normal levels for someone with COPD, Ms. Jackson expressed concern that she was feeling light headed and requested that the oxygen be taken off. The doctor told Ms. Jackson that she needed to keep the oxygen on. Shortly thereafter, Mrs. Jackson-Davis noticed that Ms. Jackson was fidgeting and acting strange. When Mrs. Jackson-Davis asked if everything was ok, Ms. Jackson said, "no" and took off the oxygen.

15.     Mrs. Jackson-Davis informed the doctor of how her mother was feeling, at which point the doctor suggested that it was probably due to the COPD and that Ms. Jackson needed another breathing treatment.

16.     Ms. Jackson then made an agonized screeching noise and went into cardiac arrest.

17.     Upon hearing the noise, the ship doctor and other Carnival staff came into the room and attempted to stabilize Ms. Jackson. Shortly after being stabilized, Ms. Jackson again made the agonized noise, signaling the onset of another heart attack.

18.     At this point, the ship's doctor stated the he needed to go call a helicopter to evacuate Ms. Jackson. Nurses then attempted to intubate and draw blood from Ms. Jackson. Shortly thereafter, Ms. Jackson suffered a severe seizure. When Mrs. Jackson-Davis ran out of the room to inform the ship's doctor, he told her that the helicopter was on its way and to get what was needed from their room on the ship. However, unbeknownst to Mrs. Jackson-Davis, the doctor had not placed a call to the air ambulance for the evacuation of Ms. Jackson.

19.     Upon returning from the room, Mrs. Jackson-Davis was informed that her mother had suffered a third heart attack. The doctor and medical staff then decided that Ms. Jackson was not in condition to fly, and told Mrs. Jackson-Davis that the Coast Guard had been called and was on their way. However, the Coast Guard had not yet been called and were not coming.

20.     While supposedly waiting for the Coast Guard, Ms. Jackson suffered yet another heart attack and passed away at roughly 5:00 a.m. on the morning of November 13, 2016. The Coast Guard was not called until roughly 4:00 p.m. on the afternoon of November 13, 2016—close to 12 hours after Ms. Jackson had died on the *Carnival Dream*.

21.     Upon receiving the news of her mother's death, Mrs. Jackson-Davis attempted to enter the medical room and saw blood on the bed where her mother lay, as well as on the floor. Mrs. Jackson-Davis also tried to take a picture of the board where all of the medications given to her mother had been written, only to find that it had already been erased by the medical staff—even though just hours earlier Mrs. Jackson-Davis had watched nurses write medications they were giving to her mother on the same board.

22.     Mrs. Jackson-Davis has forever been deprived of the companionship, support, services, and relationship of her mother, Ms. Jackson.

23.     At all times material hereto, Carnival officials and employees located in Florida had the ability to monitor and participate in safety, security, and medical emergencies on board the *Carnival Dream* by communicating with the ship's crew via telephone, videoconference, Skype and other means of communication. Carnival, through both the crew on board the *Carnival Dream* and its officials and employees in Florida, who acted in consultation with one

another, failed to properly care for Ms. Jackson.

24.     As a result of Carnival's wrongful conduct, the Plaintiff has been forced to retain the undersigned counsel to prosecute this action. The Plaintiff is obligated to pay such counsel a reasonable fee and to reimburse litigation costs.

25.     All conditions precedent to the commencement of this action have been performed, waived, or otherwise satisfied.

### COUNT I – NEGLIGENCE

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 25 of this Complaint.

26.     In light of Carnival's experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses experienced by past cruise passengers, it was reasonably foreseeable to Carnival that the *Carnival Dream* would have passengers similar in age to Plaintiff, and passengers with common illnesses such as Plaintiff's condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation and treatment.

27.     Carnival owed Plaintiff the duty of exercising reasonable care under the circumstances.  In particular, as Plaintiff was ill on board the *Carnival Dream* and reported to the ship's medical center, Carnival owed Plaintiff the duty of protecting her from injury relating to her illness, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

28.     Carnival breached its duty of protecting Plaintiff from injury relating to her illness, and of exercising reasonable care to furnish such aid and assistance as ordinarily

prudent persons would render under similar circumstances. Carnival breached its duty in one or more of the following ways:

       a.     Carnival failed to timely divert the ship or evacuate Plaintiff by helicopter or speed boat to receive competent medical care. When a sixty-eight year old woman with COPD begins suffering from seizures and multiple heart attacks, evacuation is the only sensible option.  Yet, Carnival failed to do so on November 13, 2016—instead, it failed to even call the air ambulance or the Coast Guard until after Ms. Jackson had died from multiple massive heart attacks. Carnival's failures are especially egregious given that the *Carnival Dream* was in the Mississippi River at this time and an air evacuation (by either private company or Coast Guard) would have been very simple to complete;

       b.     Carnival relied on medical opinions and/or advice of ship doctors and nurses who were not properly qualified and failed to have proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care;

       c.     Carnival failed to properly consult qualified shore-based personnel to make safe decisions about treatment and evacuation, though it had the capability through email, Skype, telephone, and other means of communication to get a competent and adequate medical opinion regarding Ms. Jackson's condition and whether she should be evacuated;

       d.     Carnival failed to adequately train, supervise, and instruct crew members to properly respond to medical emergencies and take steps to promptly evacuate a passenger who they were clearly unprepared and unqualified to treat. If properly trained, Ms. Jackson would have been evacuated immediately. A crew simply cannot take risks with sixty-eight year old who is seizing and having multiple massive heart attacks;

       e.     Carnival failed to develop and institute adequate procedures and policies to address Plaintiff's medical situation;

       f.     Carnival failed to employ the proper type of doctors and nurses; and

       g.     Carnival failed to have or utilize "Face to Face Telemedicine." Modern technology gave Carnival every opportunity to conduct a

face-to-face medical interaction with Ms. Jackson so that she could
be properly diagnosed and evacuated.

29.     Carnival knew or reasonably should have known about these conditions and
failures, but failed to correct them prior to the incident that injured Plaintiff. These
conditions and failures were longstanding and obvious to Carnival, leaving no doubt that
Carnival should have known about them.

30.     Carnival failed to determine the hazards on the *Carnival Dream*, eliminate the
hazards, modify the hazards, and/or notify Plaintiff about the hazards. Carnival violated the
International Safety Management Code and failed to have a proper Management System
Manual. These failures caused Plaintiff's injury and/or made her injuries worse.

31.     At all times, the *Carnival Dream* was unseaworthy for the reasons stated above.

32.     As a direct and proximate result of Carnival breaching its duty to Ms. Jackson,
she suffered a wrongful death. If Ms. Jackson had received the appropriate care and treatment
or had been timely evacuated from the ship, she would not have suffered such devastating
injuries resulting in death.

33.     Plaintiff seeks the following damages:

    a.  loss of support and services;

    b.  loss of earnings of Ms. Jackson;

    c.  loss of prospective net accumulations of Ms. Jackson's estate;

    d.  loss of parental companionship, instruction, and guidance;

    e.  medical expenses;

    f.  pre-death pain and suffering (both mental and physical);

    g.  compensatory damages;

h.    actual damages;

i.    consequential damages;

j.    mental pain and suffering;

k.    past and future mental anguish;

l.    interest on damages (pre- and post-judgment) in accordance with law;

m.    reasonable attorneys' fees;

n.    costs of court;

o.    all damages mentioned and/or referred to elsewhere in this Complaint

p.    all other damages recoverable under law or equity that the Court may
deem just and proper.

34.     Carnival is also liable for punitive damages because Carnival breached its duty to Ms. Jackson by conducting itself in a wanton, willful and/or outrageous manner. Plaintiff's devastating, irreversible injury could have easily been prevented. Instead, a woman was allowed to suffer a life-ending injury that should have been identified and treated immediately with proper care or a proper emergency response.

WHEREFORE, Plaintiff, Printiss Jackson-Davis, individually and as Personal Representative of the Estate of Brenda Jackson, respectfully requests that this Court enter judgment against the Defendant, Carnival Corporation d/b/a Carnival Cruise Lines, for compensatory damages, punitive damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

### COUNT II – NEGLIGENCE OF NON-MEDICAL PERSONNEL
**(Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)**

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 25 of this Complaint.

35.     In light of Carnival's experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses experienced by past cruise passengers, it was reasonably foreseeable to Carnival that the *Carnival Dream* would have passengers similar in age to Plaintiff, and passengers with common illnesses such as Plaintiff's condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation and treatment.

36.     Carnival, through its non-medical personnel, including its officers, directors, employees, agents, servants and/or persons otherwise authorized to act on behalf of Carnival, both on board the *Carnival Dream* and located at Carnival's place of business in Miami, Florida, owed Plaintiff the duty of exercising reasonable care under the circumstances. In particular, as Plaintiff was ill on board the *Carnival Dream* and reported to the ship's medical center, Carnival owed Plaintiff the duty of protecting her from injury relating to her illness, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

37.     Carnival, through the negligence of its non-medical personnel, breached its duty to Plaintiff to exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. Carnival breached its duty in one or more of the following ways:

> a.     Carnival failed to timely divert the ship or evacuate Plaintiff by helicopter or speed boat to receive competent medical care. When a sixty-eight year old woman with COPD begins suffering from seizures and multiple heart attacks, evacuation is the only sensible option.  Yet, Carnival failed to do so on November 13, 2016—instead, it failed to even

23

call the air ambulance or the Coast Guard until after Ms. Jackson suffered multiple massive heart attacks and had died Carnival's failures are especially egregious given that the *Carnival Dream* was in the Mississippi River at this time and an air evacuation (by either private company or Coast Guard) would have been very simple to complete;

b.     Carnival relied on medical opinions and/or advice of ship doctors and nurses who were not properly qualified and failed to have proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care;

c.     Carnival failed to properly consult qualified shore-based personnel to make safe decisions about treatment and evacuation, though it had the capability through email, Skype, telephone, and other means of communication to get a competent and adequate medical opinion regarding Ms. Jackson's condition and whether she should be evacuated;

d.     Carnival failed to adequately train, supervise, and instruct crew members to properly respond to medical emergencies and take steps to promptly evacuate a passenger who they were clearly unprepared and unqualified to treat. If properly trained, Ms. Jackson would have been evacuated immediately. A crew simply cannot  take risks when a sixty-eight year old woman with COPD begins suffering from seizures and multiple heart attack;

e.     Carnival failed to develop and institute adequate procedures and policies to address Plaintiff's medical situation;

f.     Carnival failed to employ the proper type of doctors and nurses; and

g.     Carnival failed to have or utilize "Face to Face Telemedicine." Modern technology gave Carnival every opportunity to conduct a face-to-face medical interaction with Ms. Jackson so that she could be properly diagnosed and evacuated.

38.     Carnival, through its non-medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Carnival, leaving no doubt that Carnival should have known about them.

39.     Carnival, through its non-medical personnel, failed to determine the hazards on

the *Carnival Dream*, eliminate the hazards, modify the hazards, and/or notify Plaintiff about the hazards. Carnival violated the International Safety Management Code and failed to have a proper Management System Manual. These failures caused Plaintiff's injury and/or made her injuries worse.

40.     At all times, the *Carnival Dream* was unseaworthy for the reasons stated above.

41.     As a direct and proximate result of Carnival breaching its duty to Ms. Jackson, she suffered a wrongful death. If Plaintiff had received the appropriate care and treatment or had been timely evacuated from the ship, she would not have suffered such devastating injuries resulting in death.

42.     Plaintiff seeks the following damages:

    a.   loss of support and services;

    b.   loss of earnings of Ms. Jackson;

    c.   loss of prospective net accumulations of Ms. Jackson's estate;

    d.   loss of parental companionship, instruction, and guidance;

    e.   medical expenses;

    f.   pre-death pain and suffering (both mental and physical);

    g.   compensatory damages;

    h.   actual damages;

    i.   consequential damages;

    j.   mental pain and suffering;

    k.   past and future mental anguish;

    l.   interest on damages (pre- and post-judgment) in accordance with law;

  m. reasonable attorneys' fees;

  n. costs of court;

  o. all damages mentioned and/or referred to elsewhere in this Complaint

  p. all other damages recoverable under law or equity that the Court may deem just and proper.

43. Carnival is also liable for punitive damages because Carnival breached its duty to by conducting itself in a wanton, willful and/or outrageous manner. Plaintiff's devastating, irreversible injury could have easily been prevented. Instead a woman was allowed to suffer a life-ending injury that should have been treated immediately with proper care or a proper emergency response.

44. Carnival is vicariously liable for the acts and/or omissions of its non-medical personnel. Carnival acknowledged that its non-medical personnel would act for it, they manifested an acceptance of the undertaking, they were subject to the right of control by Carnival, and they were acting within the scope of their employment or agency at all material times hereto.

WHEREFORE, Plaintiff, Printiss Jackson-Davis, Personal Representative of the Estate of Brenda Jackson, respectfully requests that this Court enter judgment against Defendant, Carnival Corporation d/b/a Carnival Cruise Lines, for compensatory damages, punitive damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

## COUNT III – NEGLIGENCE OF MEDICAL PERSONNEL
### (Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 25 of this Complaint.

45.     Carnival's medical personnel, including the doctors and nurses on board the *Carnival Dream*, were the employees, agents, servants and/or persons otherwise authorized to act on behalf of Carnival. Thus, Carnival is vicariously liable for the acts and/or omissions of its medical personnel.

46.     Carnival acknowledged that its medical personnel, including the doctors and nurses on board the *Carnival Dream*, would act for it, and the medical personnel manifested an acceptance of the undertaking. For example: (1) Carnival directly paid the medical personnel for their work in the medical center on board the *Carnival Dream*; (2) the medical center on board the *Carnival Dream* was created, owned and operated by Carnival; (3) the medical personnel on board the *Carnival Dream* worked at what Carnival describes in its advertising as Carnival's medical center; and (4) Carnival knowingly provided, and the medical personnel on board the *Carnival Dream* knowingly wore, uniforms bearing Carnival's name and logo.

47.     Carnival's medical personnel, including the doctors and nurses on board the *Carnival Dream*, were subject to the right of control by Carnival, and were acting within the scope of their employment or agency. For example: (1) the medical personnel were employed by Carnival; (2) the medical personnel were hired to work in a medical center on board the *Carnival Dream* that was created, owned and operated by Carnival; (3) the medical personnel were paid salaries and/or other employment related benefits directly by Carnival; (4) the medical personnel on board the *Carnival Dream* were considered to be members of the ship's crew; (5) the medical personnel were required to wear uniforms or other insignia furnished by Carnival; (6) Carnival put the medical personnel on board the *Carnival Dream* under the

command of the ship's superior officers, and they were subject to the ship's discipline and the master's orders; (7) Carnival had the right to fire its medical personnel; (8) Carnival used its Sail & Sign program to directly bill the Plaintiff and other passengers onboard the *Carnival Dream* for services rendered by its medical personnel and/or use of the onboard medical center, medical equipment and medical supplies; and (9) the medical personnel on board the *Carnival Dream* were subject to the control of Carnival's shore-side medical department located in Miami, Florida.

48.    Carnival, through its medical personnel, owed Ms. Jackson the duty of exercising reasonable care under the circumstances. In particular, as Ms. Jackson was ill on board the *Carnival Dream* and reported to the ship's medical center, Carnival owed Ms. Jackson the duty of protecting her from injury relating to her illness, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

49.    Carnival, through its medical personnel, breached its duty of protecting Ms. Jackson from injury relating to her illness, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. Carnival, through its medical personnel, breached its duty in one or more of the following ways:

a.    Carnival failed to properly assess the condition of Ms. Jackson;

b.    Carnival failed to timely diagnose and appropriately treat Ms. Jackson;

c.    Carnival failed to perform appropriate diagnostics to further assess the condition of Ms. Jackson;

d.      Carnival failed to obtain consultations with appropriate specialists, who would have evacuated Ms. Jackson immediately. A crew simply cannot take risks with a sixty-eight year old who is seizing and having multiple heart attacks;

e.      Carnival failed to properly monitor Ms. Jackson;

f.      Carnival failed to timely divert the ship or evacuate Plaintiff by helicopter or speed boat to receive competent medical care. When a sixty-eight year old woman with COPD begins suffering from seizures and multiple heart attacks, evacuation is the only sensible option.  Yet, Carnival failed to do so on November 13, 2016—instead, it failed to even call the air ambulance or the Coast Guard until after Ms. Jackson suffered multiple massive heart attacks and had died;

g.      Carnival failed to properly consult qualified shore-based personnel to make safe decisions about treatment and evacuation, though it had the capability through email, Skype, telephone, and other means of communication to get a competent and adequate medical opinion regarding Ms. Jackson's condition and whether she should be evacuated;

h.      Carnival failed to have or utilize "Face to Face Telemedicine." Modern technology gave Carnival every opportunity to conduct a face-to-face medical interaction with Ms. Jackson so that she could be properly diagnosed and evacuated.

i.      Carnival failed to develop and institute adequate procedures and policies to address Plaintiff's medical situation;

j.      Carnival provided medical opinions and/or advice when they were not properly qualified and lacked proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care; and

k.      Carnival deviated from the standard of care for treating patients in Plaintiff's condition.

50.     As a direct and proximate result of Carnival, through its medical personnel, breaching its duty to Ms. Jackson, she suffered a wrongful death. If Ms. Jackson had received the appropriate care and treatment or had been  timely evacuated from the ship, she would not have suffered such devastating injuries resulting in death.

51.     Plaintiff seeks the following damages:

    a.   loss of support and services;

    b.   loss of earnings of Ms. Jackson;

    c.   loss of prospective net accumulations of Ms. Jackson's estate;

    d.   loss of parental companionship, instruction, and guidance;

    e.   medical expenses;

    f.   pre-death pain and suffering (both mental and physical);

    g.   compensatory damages;

    h.   actual damages;

    i.   consequential damages;

    j.   mental pain and suffering;

    k.   past and future mental anguish;

    l.   interest on damages (pre- and post-judgment) in accordance with law;

    m.   reasonable attorneys' fees;

    n.   costs of court;

    o.   all damages mentioned and/or referred to elsewhere in this Complaint

    p.   all other damages recoverable under law or equity that the Court may

        deem just and proper.

52.     Carnival is liable for punitive damages because Carnival, through its medical personnel, breached its duty to Ms. Jackson by conducting itself in a wanton, willful and/or outrageous manner.  Moreover, Carnival actively and knowingly participated in such conduct, the officers, directors or managers of Carnival knowingly condoned, ratified or consented to

such conduct, and/or Carnival engaged in its own wanton, willful and/or outrageous conduct that contributed to Plaintiff's loss. Plaintiff's devastating, irreversible injury could have easily been prevented. Instead, a woman was allowed to suffer a life- ending injury that should have been identified and treated immediately with proper care or a proper emergency response.

WHEREFORE, Plaintiff, Printiss Jackson-Davis, Personal Representative of the Estate of Brenda Jackson, respectfully requests that this Court enter judgment against Defendant, Carnival Corporation d/b/a Carnival Cruise Lines, for compensatory damages, punitive damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

## COUNT IV – NEGLIGENCE OF MEDICAL PERSONNEL
### (Vicarious Liability Based Upon Apparent Agency)

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 25 of this Complaint.

53.   Carnival's medical personnel, including the doctors and nurses on board the *Carnival Dream*, were the apparent employees, agents, servants and/or persons otherwise authorized to act on behalf of Carnival. Thus, Carnival is vicariously liable for the acts and/or omissions of its medical personnel.

54.   Carnival made representations to the Plaintiff and other passengers onboard the *Carnival Dream* that the ship's medical personnel were the employees, agents, servants and/or persons otherwise authorized to act for Carnival's benefit. For example: (1) Carnival promoted the medical personnel on board the *Carnival Dream* and represented them as being Carnival employees through brochures, internet advertising and/or signs, documents, and uniforms on the ship; (2) Carnival promoted the medical center on board the *Carnival Dream* and described it in proprietary language; (3) the medical personnel on board the *Carnival Dream* worked in

the medical center that Carnival promoted and described in proprietary language; (4) Carnival used its Sail & Sign program to directly bill the Plaintiff and other passengers onboard the *Carnival Dream* for services rendered by the onboard medical personnel and/or use of the onboard medical center, medical equipment and medical supplies; (5) the medical personnel on board the *Carnival Dream* were required to wear uniforms or other insignia furnished by Carnival; (6) Carnival held out the medical personnel on board the *Carnival Dream* as members of the ship's crew; and (7) the medical personnel on board the *Carnival Dream* spoke and acted as though they were employed by Carnival. Carnival had knowledge of such representations but never took any action to indicate otherwise.

55.    Carnival's representations to the Plaintiff and other passengers onboard the *Carnival Dream* caused them to reasonably believe that the ship's medical personnel were the employees, agents, servants and/or persons otherwise authorized to act for Carnival's benefit. Indeed, Carnival actually intended that the Plaintiff and other passengers onboard the *Carnival Dream* have such perception or belief because it is a marketing tool to induce passengers such as the Plaintiff to purchase cruises on Carnival's ships in the first place, to feel secure while on board Carnival's ships and/or to be a repeat Carnival customer.

56.    Carnival's representations to the Plaintiff and other passengers onboard the *Carnival Dream* induced their detrimental, justifiable reliance upon the appearance of agency. For example, Mrs. Jackson-Davis and Ms. Jackson justifiably relied upon Carnival's representations in deciding to purchase a cruise on the *Carnival Dream*. Mrs. Jackson-Davis and Ms. Jackson also justifiably relied upon Carnival's representations while onboard the *Carnival Dream* in following the advice of the ship's medical personnel with respect to the examination, diagnosis and treatment of Ms. Jackson. Such reliance was also detrimental as

23

Ms. Jackson ultimately suffered injuries that resulted in her death because of it.

57.     Carnival, through its medical personnel, owed Ms. Jackson the duty of exercising reasonable care under the circumstances. In particular, as Ms. Jackson was ill on board the *Carnival Dream* and reported to the ship's medical center, Carnival owed Ms. Jackson the duty of protecting her from injury relating to her illness, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

58.     Carnival, through its medical personnel, breached its duty of protecting Plaintiff from injury relating to her illness, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. Carnival, through its medical personnel, breached its duty in one or more of the following ways:

a.     Carnival failed to properly assess the condition of Ms. Jackson;

b.     Carnival failed to timely diagnose and appropriately treat Ms. Jackson;

c.     Carnival failed to perform appropriate diagnostics to further assess the condition of Ms. Jackson;

d.     Carnival failed to obtain consultations with appropriate specialists, who would have been evacuated Ms. Jackson immediately. A crew simply cannot take risks with a sixty-eight year old woman who is seizing and having multiple heart attacks;

e.     Carnival failed to properly monitor Ms. Jackson;

f.     Carnival failed to timely divert the ship or evacuate Plaintiff by helicopter or speed boat to receive competent medical care. When a sixty-eight year old woman with COPD begins suffering from seizures and multiple heart attacks, evacuation is the only sensible option.  Yet, Carnival failed to do so on November 13, 2016—instead, it failed to even call the air ambulance or the Coast Guard until after Ms. Jackson suffered multiple massive heart attacks and had died;

g.    Carnival failed to properly consult qualified shore-based personnel to make safe decisions about treatment and evacuation, though it had the capability through email, Skype, telephone, and other means of communication to get a competent and adequate medical opinion regarding Ms. Jackson's condition and whether she should be evacuated;

h.    Carnival failed to have or utilize "Face to Face Telemedicine." Modern technology gave Carnival every opportunity to conduct a face-to-face medical interaction with Ms. Jackson so that she could be properly diagnosed and evacuated.

i.    Carnival failed to develop and institute adequate procedures and policies to address Ms. Jackson's medical situation;

j.    Carnival provided medical opinions and/or advice when they were not properly qualified and lacked proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care; and

k.    Carnival deviated from the standard of care for treating patients in Ms. Jackson's condition.

59.    As a direct and proximate result of Carnival, through its medical personnel, breaching its duty to Ms. Jackson, she suffered a wrongful death. If Ms. Jackson had received the appropriate care and treatment or had been timely evacuated from the ship, she would not have suffered such devastating injuries resulting in death.

60.    Plaintiff seeks the following damages:

a.   loss of support and services;

b.   loss of earnings of Ms. Jackson;

c.   loss of prospective net accumulations of Ms. Jackson's estate;

d.   loss of parental companionship, instruction, and guidance;

e.   medical expenses;

f.   pre-death pain and suffering (both mental and physical);

     g.   compensatory damages;

     h.   actual damages;

     i.   consequential damages;

     j.   mental pain and suffering;

     k.   past and future mental anguish;

     l.   interest on damages (pre- and post-judgment) in accordance with law;

     m.   reasonable attorneys' fees;

     n.   costs of court;

     o.   all damages mentioned and/or referred to elsewhere in this Complaint

     p.   all other damages recoverable under law or equity that the Court may deem just and proper.

61.    Punitive damages may be imposed against Carnival because Carnival, through its medical personnel, breached its duty to Ms. Jackson by conducting itself in a wanton, willful and/or outrageous manner.  Moreover, Carnival actively and knowingly participated in such conduct,  the officers, directors or managers of Carnival knowingly condoned, ratified or consented to such conduct, and/or Carnival engaged in its own wanton, willful and/or outrageous conduct that contributed to Plaintiff's loss. Plaintiff's devastating, irreversible injuries resulting in death could have easily been prevented.  Instead,  a woman was  allowed to  suffer  a life-ending injury that should have been identified and treated immediately with basic care or a proper emergency response.

WHEREFORE Plaintiff, Printiss Jackson-Davis, Personal Representative of the Estate of Brenda Jackson, respectfully requests that this Court enter judgment against Defendant,

Carnival Corporation d/b/a Carnival Cruise Lines, for compensatory damages, punitive damages, interest, court costs, and all other relief recoverable under general maritime law or as this Court deems just and proper.

### COUNT V – NEGLIGENCE / HIRING AND RETENTION

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 25 of this Complaint.

62.   In light of Carnival's experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses experienced by past cruise passengers, it was reasonably foreseeable to Carnival that the *Carnival Dream* would have passengers similar in age to the Plaintiff, and passengers with common illnesses such as the Plaintiff's condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation and treatment.

63.   Carnival owed Plaintiff the duty of exercising reasonable care to employ competent and fit medical personnel, including competent and fit doctors and nurses on board the *Carnival Dream*. However, Carnival's medical personnel, including the doctors and nurses on board the *Carnival Dream*, were incompetent or unfit to perform the requisite examination, evaluation and treatment for passengers like the Ms. Jackson, and Carnival knew or reasonably should have known that they were incompetent or unfit to do so.

64.   Carnival breached its duty by hiring incompetent and unfit  medical  personnel. For example, Carnival failed to conduct an appropriate background investigation to determine if they were qualified by training and/or experience, and if they were capable of conducting an appropriate examination and/or evaluation for purposes of treatment or referral for appropriate

treatment to a shore side facility. An appropriate investigation by Carnival would have revealed the incompetence or unfitness of its medical personnel to examine, evaluate, treat or refer to an appropriate shore side facility or physician to treat conditions such as those Ms. Jackson suffered from.

65.     Specifically, Carnival knew that in 2012, physician Djordje Debeljacki (the same physician who provided negligent treatment to Ms. Jackson in this case) was sued for medical malpractice that occurred on another Carnival cruise ship in Case No. 11-21806-Civ-Martinez/McAliley in the Southern District of Florida, Miami Division. At the time of the suit, Dr. Debeljacki worked for Carnival. Despite Carnival knowing that Djordje Debljacki was sued for malpractice on another one of Carnival's cruise ships, Carnival nevertheless negligently continued to employ Djordje Debljacki. As a direct and proximate result of Carnival's negligent retention of Djordje Debljacki, Carnival allowed Debljacki to provide negligent and grossly negligent care to Ms. Jackson in this case. Had Carnival terminated Djordje Debljacki after the previous medical malpractice case, he would not have been able to negligently treat Ms. Jackson in this case.

66.     Additionally, Carnival physicians are hired on four-month contracts.[1] This means that since the 2012 malpractice lawsuit against Djordje Debljacki, Carnival had to re-

---

[1] For example, in an interview with PracticeLink (a physician resource website), Carnival Senior Physician Adriana Yates answered the question "How long are the contracts?" with the answer "Usually, the contracts are for four months." *See* Marcia Travelstead, Cruise ship physician, PracticeLink (last visited March 29, 2018), https://journal.practicelink.com/spring-2011-cruise-ship-physician/. *See also* Cruise Ship Medicine Section – Cruise Line Directory, American College of Emergency Physicians (last visited March 29, 2018), https://www.acep.org/cruiselinedirectory/#sm.00039mg1210opf73qju12am400xib (Carnival Cruise Line stating that "[o]ur medical centers are staffed by full time doctors and nurses, who generally sign on for contracts of 4 months duration"); Carnival Cruise Lines Ship's Doctor Profile and Job Requirements, Cruise Ship Jobs (last visited March 29, 2018), http://www.cruiseshipjob.com/articles/carnival-cruise-lines-doctor ("Full time contracts for physicians are 4 months.").

hire or renew Djordje Debljacki's contract again multiple times and did so with actual knowledge of Djordje Debljacki's previous medical malpractice. This is additional evidence that Carnival negligently hired Djordje Debljacki between the 2012 lawsuit and the incident in this case. Again, as a direct result of Carnival's negligent hiring of Djordje Debljacki, Carnival put allowed Djordje Debljacki to treat Ms. Jackson negligently in this case.

67.     In sum, Carnival breached its duty by hiring and then retaining incompetent and unfit medical personnel. For example, Carnival became aware or should have become aware of problems with its medical personnel indicating incompetence and unfitness (one example is the aforementioned medical malpractice lawsuit), but Carnival failed to take appropriate action such as investigating the problems with its medical personnel, discharging its medical personnel or otherwise remedying the problems by providing appropriate training and other resources. It was unreasonable for Carnival to hire and retain its medical personnel in light of the information it knew or should have known.

68.     As a direct and proximate result of the incompetence or unfitness of Carnival's medical personnel, Ms. Jackson suffered severe injuries resulting in her wrongful death. If the medical personnel had been competent and fit, Ms. Jackson would have received appropriate care and treatment or been timely evacuated from the ship so that she would not have suffered such a devastating, irreversible injury resulting in her wrongful death.

69.     Plaintiff seeks the following damages:

    a.   loss of support and services;

    b.   loss of earnings of Ms. Jackson;

    c.   loss of prospective net accumulations of Ms. Jackson's estate;

d.   loss of parental companionship, instruction, and guidance;

e.   medical expenses;

f.   pre-death pain and suffering (both mental and physical);

g.   compensatory damages;

h.   actual damages;

i.   consequential damages;

j.   mental pain and suffering;

k.   past and future mental anguish;

l.   interest on damages (pre- and post-judgment) in accordance with law;

m.   reasonable attorneys' fees;

n.   costs of court;

o.   all damages mentioned and/or referred to elsewhere in this Complaint

p.   all other damages recoverable under law or equity that the Court may deem just and proper.

70.     Punitive damages may be imposed against Carnival because Carnival breached its duty to Plaintiff by conducting itself in a wanton, willful and/or outrageous manner. Plaintiff's devastating, irreversible injury could have easily been prevented. Instead, a woman was allowed to suffer a life-ending injury that should have been identified and treated immediately with proper care or a proper emergency response.

WHEREFORE Plaintiff, Printiss Jackson-Davis, Personal Representative of the Estate of Brenda Jackson, respectfully requests that this Court enter judgment against Defendant, Carnival Corporation d/b/a Carnival Cruise Lines, for compensatory damages, punitive

damages, interest, court costs, and all other relief recoverable under general maritime law or

as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all claims set forth herein.

Respectfully submitted,

ARNOLD & ITKIN LLP
Kurt Arnold
Texas Bar No. 24036150 *Admitted Pro Hac Vice*
karnold@arnolditkin.com
Caj Boatright
Texas Bar No. 24036237 *Admitted Pro Hac Vice*
cboatright@arnolditkin.com
Roland Christensen
Texas Bar No. 24101222 *Admitted Pro Hac Vice*
rchristensen@arnolditkin.com
Alison Baimbridge
Texas Bar No. 24040160 *Admitted Pro Hac Vice*
abaimbridge@arnolditkin.com
6009 Memorial Drive
Houston, Texas  77007
Telephone: (713) 222-3800
Facsimile:  (713) 222-3850
For electronic service:
e-service@arnolditkin.com

-AND-

LEESFIELD SCOLARO, P.A.

/s/ *Thomas Graham*
Thomas D. Graham
Florida Bar No.: 89043
graham@leesfield.com
2350 South Dixie Highway
Miami, Florida 33133
Telephone: (305) 854-4900
Facsimile: (305) 854-8266

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFIY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF on March 29, 2018, which will provide a copy of the foregoing document to all counsel of record by CM/ECF and/or another means in accordance with the Federal Rules of Civil Procedure.

*/s/ Thomas D. Graham*
Thomas D. Graham